DANIEL BUNKER, Jr., *et al.*

*v.*

JOSEPH H. GREEN.

1.  PLEADING.—*irregularities cured by trial.* Where defendants file pleas of justification and plaintiffs fail to reply and the parties go to trial, they thereby waive the irregularity and cannot assign the want of replications as error in this court.

2.  JUDGMENT—*nunc pro tunc—after death of a sole plaintiff.* Where a trial was had in an action of trespass, to personal property, the jury found a verdict in favor of the plaintiff, when a motion for a new trial was entered, but not decided for several months, and in the meantime the plaintiff died, and the court thereupon rendered a judgment *nunc pro tunc,* as of the term at which the trial was had, but of a date eight days prior to the finding of verdict: *Held,* that as the action survived to the legal representatives of the plaintiff, under the seventh section of the act in reference to abatement, plaintiff's death should have been suggested and the suit revived in the name of his representatives, and that it was error to render judgment of a date prior to the finding of the verdict, but being immaterial, a judgment would not be reversed for that reason.

3.  EVIDENCE—*when admissible.* The declaration of the vendor of chattels in reference to the character of the sale, made after the execution of a bill of sale, and the delivery of the key of the store, in which the goods were situated, are not admissible to disparage the title of the purchaser. The declarations of the vendor made before and at the time of the sale, are admissible to show the character of the transaction, but not those made afterwards.

4.  SAME—*bill of sale—revenue stamp.* Where it appeared that the revenue stamp attached to a bill of sale was less than that designated by the revenue law: *Held,* that it was nevertheless admissible. In the cases of *Latham* v. *Smith,* 45 Ill. 29, and *Craig* v. *Dimmock,* 47 Ill. 308, it was held that the General Government had power to prevent all unstamped instruments from being read in evidence in the federal courts, but not in the State courts; and the revenue law only applied to the federal courts.

5.  VERDICT—*weight of evidence.* A verdict will not be disturbed because the evidence is conflicting; but to do so it must be manifestly against the weight of evidence.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The facts in this case are fully presented in the opinion.

Messrs. KNOWLTON & JAMIESON, for the appellants.

Mr. E. W. EVANS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of trespass *de bonis asportatis,* brought by appellee against appellants, in the Cook Circuit Court. It appears that B. F. Green and Thomas M. Ackerly, who were doing business under the firm name of F. B. Green & Co., sold their stock in trade to Joseph H. Green. They being indebted to Daniel Bunker, he sued out a writ of attachment, and placed the same in the hands of the sheriff, who caused it to be levied upon a portion of the goods previously sold to Joseph H. Green, alleging that the sale by Green & Ackerly was made with intent to hinder, delay and defraud their creditors. Joseph H. Green thereupon brought this suit against Bunker, the Sheriff, and his deputy, and George W. Ramsdell. Several pleas were filed presenting the general issue and justification under the writ of attachment. To one or more of the pleas of justification no replication was filed, nor issue joined. A trial was had upon these pleas before the court and a jury, resulting in a verdict in favor of plaintiff below for $828 damages. A motion for a new trial was entered, but overruled by the court, and judgment was rendered upon the verdict, and the case is brought to this court by appeal, and a reversal asked on various grounds.

Among other grounds, it was urged that it was error to try the cause without issue being joined on the pleas of justification. By failing to file replications to these pleas, plaintiff was in a default, and could have been put under a short rule for replications, had defendants asked, and had he failed to comply with such rule, his suit could have been dismissed; but

defendants failed to ask it, and chose to go to trial on the pleas as they then stood, and a trial was had, in all respects, as the bill of exceptions discloses, precisely as though issues had been formed by proper replications. We can perceive no injury sustained by the defendants, nor have they pointed out any in their argument. Although irregular, we must hold, that, by going to trial, defendants waived the objection, as they fail to show that it worked them any injury.

It is again urged, that the court below erred in rendering judgment *nunc pro tunc*, after the death of plaintiff. It appears that upon the coming in of the verdict, a motion for a new trial was entered, but was not decided until in the following January, when it was overruled, and judgment rendered as of the previous October term, at which the cause was tried. In the 2d volume Tidd's Practice, 846, 1st Am. Ed., it is said: "And if either party die after a special verdict, and pending the time taken for argument or advising thereon, or on a motion in arrest of judgment, or for a new trial, judgment may be entered, at common law, after his death, as of the term in which the *postea* was returnable, or judgment would otherwise have been given *nunc pro tunc*, that the delay arising from the act of the court may not turn to the prejudice of the party." This seems to be the long and well settled rule of practice under the common law, and is not unreasonable or unjust in its application. A party should not be deprived of his rights because the tribunals of justice delay in its administration.

Section 7 of the chapter entitled "Abatement," declares that suits which survive shall not abate by the death of a sole plaintiff, before final judgment. At common law, actions of tort did not survive to the executor, but by the 3 Edwd. 3 ch. 7, it was enacted that actions of trespass, for injuries to personal property, should survive, and executors might recover damages for such injuries; and this act being prior in date to the fourth year of the reign of James the First, and being of

a general character and not local, under our statute, adopting
the common law and statutes of England, became the law of
this State. Thus, it will be seen, that, to be entirely regular,
the representatives of Joseph H. Green should have become
parties plaintiff before the entry of the judgment on the ver-
dict. The record shows that the trial was commenced on the
16th day of October, 1867, and the jury returned their verdict
on the 18th, when a motion for a new trial was entered, but
was not decided until the 17th day of January, 1868, when it
was overruled, and judgment rendered *nunc pro tunc*, as of
the tenth of October, 1867. Thus it appears that it purports
to have been entered eight days before the verdict was ren-
dered. If such a judgment could have become a lien on the
real estate of defendants on the day of its entry, then it would
have created that lien eight days before plaintiff would have
been entitled to it, had there been no delay in rendering the
judgment; but our statute only creates a lien from the last
day of the term of the court at which it is rendered, and not
before. It may have been irregular to enter a judgment
without first reviving the suit in the name of the representa-
tives of the deceased plaintiff, but it is not such an error as
requires the reversal of the judgment of the court below;
but whether or not the judgment thus entered became
a superior lien upon any real estate which defendants
may have sold whilst the motion for a new trial was pending,
or should be preferred to any judgment or other liens that
may have attached during that time, if there be such, is not
a question presented by the record, and is not decided. Even
if such liens exist, we fail to see that such a question can,
in any wise, affect the rights of appellants.

It is next insisted that the court below erred in rejecting
evidence of the declarations of B. F. Green, in reference to
the character of the sale to his father. It appears that the
declarations offered to be proved, were made after the bill
of sale was executed, and the key of the store delivered to

the father.   This operated as a symbolical delivery—such as the goods were only capable of—and after such a sale and delivery, the vendor becomes a stranger to the title to the goods; and his declarations, from that time forward, could no more affect the title of the purchaser than those of any other stranger to the transaction.   Declarations made by the vendor previous to and at the time of the sale, may be received to show the character of the transaction, but not those made afterwards.   It therefore follows that the court below committed no error in rejecting this evidence.

It is also objected, that the bill of exceptions discloses the fact that there was not a proper government stamp upon the bill of sale, and that the objection was raised on the trial below.   In the cases of *Latham* v. *Smith*, 45 Ill. 29, and *Craig* v. *Dimmock*, 47 Ill. 308, it was held, that, while the general government had the power to prevent all instruments not stamped from being read in evidence in the United States courts, such a power over evidence in the State courts did not exist, and that the revenue act, prohibiting unstamped instruments from being read in evidence, only applied to the federal, and not to the State courts.   It then follows that this bill of sale was properly received in evidence, notwithstanding it had no revenue stamp attached.   In this there was no error.

Objections were made to the instructions which were given for appellee, and to the modifications of a portion of those given for appellants.   After a careful examination of these instructions, we are unable to perceive that any of them are erroneous, as given by the court.   They seem to present the law applicable to the case fully and fairly to the jury, and were not calculated to mislead them in their deliberations upon the evidence, and in arriving at a verdict.

It is also urged, that the jury found against the weight of evidence, and that a new trial should have been granted for that reason.   After an attentive perusal of all the testimony, we see that it is somewhat conflicting, but we are not prepared

to hold that the finding is not sustained by the proof. It is the province of the jury to weigh and consider the evidence, and reconcile it, so far as that may be done, and if not able to harmonize it, then to reject such portions as they may regard as unworthy of belief, and give proper weight to the remainder, and base their verdict upon it. We only set aside verdicts where they are clearly against the evidence. Such is not the case on the evidence in this record. The judgment of the court below is affirmed.

*Judgment affirmed.*