MARSHALL WILCOX, Admr., Appellant, *vs.* WILLIAM G. BIERD *et al.* Appellees.

*Opinion filed June 23, 1928.*

1. INJURIES—*Injuries act creates new cause of action unknown to common law.* The Injuries act creates a new cause of action unknown to the common law and purely statutory, and the statute should not be extended beyond the fair import of the language used.

2. SAME—*dependency must be shown to warrant recovery for benefit of collateral kin.* To warrant recovery under the Injuries act for wrongful death pecuniary loss must be shown from facts and circumstances as to what the life of the deceased was in a pecuniary sense worth to the next of kin, and while in the case of lineal kindred the law presumes pecuniary loss from the fact of death, if the next of kin are collateral it is a material question whether they were in the habit of claiming and receiving pecuniary assistance from the deceased.

3. SAME—*no recovery is warranted where no next of kin survive.* To warrant recovery for wrongful death under the Injuries act the plaintiff must allege and prove that the deceased left a widow or a husband and next of kin, and if he left no widow or husband, or next of kin in any degree, there can be no recovery.

4. SAME—*meaning of term "next of kin," in Injuries act.* The words "next of kin," in the Injuries act, are used as a technical legal phrase in their technical sense as meaning persons nearest in degree of blood surviving the deceased, while in its practical use the term means, ordinarily, those persons who take the personal estate of a deceased person under the Statute of Descent.

5. SAME—*action for wrongful death does not survive the beneficiary—next of kin.* As the action for wrongful death under the Injuries act is purely statutory and is not an action for injuries to the person, to personal property or to real estate within the meaning of section 123 of the Administration act, the action does not survive but abates upon the death of the party for whose benefit it is brought; and where said beneficiary is the last surviving next of kin in the first degree of the person for whose wrongful death the suit is brought, although the beneficiary survived the deceased but thirty minutes, no action can be prosecuted for the benefit of collateral or second degree kindred, as they were not next of kin at the deceased's death.

6. DESCENT—*parents are second degree kindred.* The doctrine of the civil law and of the common law that parents and children stand in the same degree of kindred was changed by the Descent act of 1829, and under that statute parents are reduced to the second degree of kindred.

7. ACTIONS AND DEFENSES—*what actions do not survive at common law.* Where the right of action is so entirely personal that a person cannot by contract place it beyond his control the action does not survive at common law, and as causes of action arising from torts to the person or character, where the injury or damage is confined to the body or feelings, are not assignable such actions do not survive, but the general rule that actions *ex delicto* do not survive was modified by the English statute which gives an action in favor of a personal representative for an injury to personal property.

8. SAME—*when an action for personal injuries survives under statute.* Prior to the enactment of section 123 of the Administration act an action for personal injuries abated on the death of the injured party, but under the statute if the injured person dies from some cause other than the injury the action survives to his personal representatives.

9. SAME—*statutory action does not survive unless so provided.* A cause of action created by statute does not survive unless provision is made for its survival by the statute creating it or by some other statute.

10. STARE DECISIS—*when decisions construing statutes of other States will not be followed.* A statute adopted from another State is usually adopted with the construction which the courts of that State have placed upon it before such adoption, but a construction by such courts since such adoption is not binding, particularly where the holdings in such courts are based on a statute other than the one adopted and differing from the Illinois statute on the same subject.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

GEORGE M. MORGAN, and EDMUND BURKE, for appellant.

WILLIAM L. PATTON, (SILAS H. STRAWN, of counsel,) for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellant brought an action of trespass on the case for the wrongful death of Percy C. Wilcox, in the circuit court of Sangamon county, against appellees, receivers for the Chicago and Alton Railroad Company, for the benefit of the next of kin of the deceased, under "An act requiring compensation for causing death by wrongful act, neglect or default," approved and in force February 12, 1853. (Laws of 1853, p. 97.) The original declaration contained three counts, the first count charging negligence of appellees' servant in failing to lower gates maintained by the railroad company at a certain street crossing in Springfield, and negligence of appellees in running a certain train over said crossing at the dangerous rate of speed of forty miles an hour. The second count charged negligence of appellees' servant employed at said crossing in failing to lower the gates maintained by the railroad company at the crossing, in accordance with a certain order or resolution adopted by the city council of the city of Springfield so as to warn persons and stop them from going on the track when trains were crossing said street. The third count charged negligence of appellees in the violation of a certain ordinance of the city of Springfield requiring them to run their trains over said crossing at a speed of not more than ten miles per hour, and in negligently running their train over the crossing at a speed of forty miles per hour. It is further alleged in the three counts that Wilcox was traveling on the street and attempted to cross the railroad at said crossing, and, while exercising reasonable care for his safety while approaching and crossing said railroad, the locomotive engine of the train of appellees collided with and struck with great violence the automobile in which he was riding

and killed him; that at the time of his death he was twenty-nine years old, and left surviving him as his next of kin one child of the age of nine months, named Mildred Wilcox, to the damage of appellant in the amount of $10,000.

Appellees filed a verified plea in abatement, alleging that the suit is brought under said act to recover damages for the supposed wrongful killing of Percy C. Wilcox; that at the time of the death of Wilcox he left surviving him no widow but left as his sole surviving next of kin his infant daughter, Mildred, of the age of nine months; that within thirty minutes after the death of Wilcox Mildred departed this life; that no administration has ever been taken out on the estate of Mildred, and that she departed this life before the appointment of appellant as administrator of the estate of Wilcox and before the bringing of this suit; that by the death of Mildred the cause of action on account of the death of Wilcox created by the act abated and no cause of action survived to appellant, and no right has ever arisen in appellant to bring or maintain this action. Appellees prayed judgment of the declaration and suit and that the same may be abated and quashed.

To the plea of appellees appellant filed a general demurrer, which was overruled by the court. Appellant asked and was granted leave to file, and did file, three additional counts to the declaration, which contained substantially the same averments made in the original counts, except that all the additional counts contain conclusions slightly different from those in the original counts, substantially in these words: Mary T. Wilcox, wife of Percy C. Wilcox, and all his children, namely, Edna Wilcox and Mildred Wilcox, were then and there riding in the automobile with him, and all of them were killed by the locomotive and train; that the wife, Mary T. Wilcox, and the child Edna Wilcox, died instantly; that within ten minutes after their death Wilcox died, at the age of twenty-nine years; that within thirty minutes after he died the other child, Mildred, died, at the

age of nine months; that Wilcox was in the exercise of reasonable care for their safety while approaching and crossing the railroad; that both the father and mother of Wilcox, to whom he contributed support, survive him and are now living, and that no brothers or sisters or descendants of brothers or sisters survived him; to the damage of appellant, as administrator, in the sum of $10,000.

To the additional counts appellees demurred generally and specially. The special causes of the demurrer are, that on the face of the counts it appears that the deceased left surviving him his daughter, Mildred Wilcox, who died within thirty minutes after his death; that the right of action, if any, accrued to the benefit of Mildred and to no other person or persons; that upon the death of Mildred the right of action which had so accrued for her personal and sole benefit did not survive her for the benefit of any person or persons but abated and cannot now be prosecuted, and that appellant has no right or cause of action upon which a recovery may or can be predicated or had. The court sustained the demurrer and entered judgment against appellant. On appeal to the Appellate Court for the Third District that court affirmed the judgment and granted a certificate of importance and an appeal to this court, which was perfected by appellant.

As we understand the contentions of appellant, they are, in substance, that the additional counts state a good cause of action against appellees in the name of the administrator of Percy C. Wilcox, deceased, for the use of Mildred Wilcox or her legal representatives, or for the use of the father and mother of Wilcox. Appellant's first theory or argument is, that Mildred sustained actual damages by the wrongful killing of her father, and not merely nominal damages because of the fact that she only survived her father thirty minutes; that appellees cannot be heard to make the claim that Mildred only sustained nominal damages because she only lived thirty minutes after her father's death, after

admitting by the demurrer that they wrongfully caused the death of her father and that she only lived thirty minutes thereafter, because they also at the same time wrongfully caused her death; that therefore the cause of action did not abate by reason of the death of Mildred, and that there should be a recovery in this suit for substantial damages for the use of Mildred's legal representatives. The second contention is, that as section 2 of said act provides that the amount recovered shall be for the exclusive benefit of the widow and next of kin and distributed as provided by law, it necessarily means an amount which is material or substantial, and if by reason of death the survivorship of the immediate next of kin, or some of them, is so short that there can be no material or substantial damages to recover and distribute to the survivor or to his estate, then such survivor is not within the term "next of kin." It is then asserted that within the spirit and intendment of said act only substantial damages are contemplated; that in this case it can make no prejudicial difference to appellees whether substantial damages be recovered under the original or under the additional counts, as the provisions for distribution in section 2 of the act do not concern them; that so long as there is a next of kin of Wilcox surviving who has sustained pecuniary loss, the action may be maintained by appellant although such next of kin would not have been entitled to share in the distribution if others of the next of kin who survived had not died.

Appellees' position is that the issues of law in this case are raised in two modes: First, by the demurrer to the special plea to the original counts, and second, by the demurrer to the additional counts, and that the same legal questions arise upon each demurrer. They contend that no recovery in any amount or upon any theory can be had by the representative of the father for the benefit of the representatives of the child, who survived only thirty minutes after the death of her father. They also contend that the

action which arose upon the death of the father for the
benefit of the surviving child abated upon the death of the
child, and even though the action did not completely abate,
it survived in the personal representative of the father for
the recovery of only nominal damages,—*i. e.,* the damages
suffered by the child during the thirty minutes preceding
its death; and that this court will not reverse the judgments
of the Appellate and trial courts in favor of appellees and
remand the cause to the trial court, where only nominal
damages would be recoverable.

If the contention of appellant that on the death of Mil-
dred Wilcox the action survived for the benefit and use of
her legal representatives is sustainable, there would appear
to be reasonable ground for his contention that a good cause
of action is stated by the additional counts of the declara-
tion for the recovery of substantial damages. In *Swift Co.*
v. *Gaylord,* 229 Ill. 330, it was said: "If there was an
actual loss of pecuniary aid, one element in determining
its amount was the length of time such aid might be ex-
pected to continue, and while it might be terminated by
many contingencies other than the death of the giver or the
receiver, yet the probable length of their respective lives
was proper to be taken into consideration in estimating the
amount." That decision is authority for the contention of
appellees that the reasonable expectation of life of the de-
ceased and of his next of kin may be considered in estimat-
ing their pecuniary loss by his death. The actual time that
Mildred Wilcox lived after the death of her father was only
thirty minutes, but that was so because of the fact that ap-
pellees by their own wrongful act killed her at the same time
and by the same collision which killed her father. If she
had died a natural death and had only lived thirty minutes
after the death of her father appellees' position would be
tenable, but her actual expectation of life would not have
been thirty minutes after the death of her father if she had
escaped injury in the collision. We only make these ob--

330—37

servations to make it clear that we do not agree with all of appellees' contentions in their argument and are only deciding this case on what we consider the vital issues in the case. It is certain that under the provisions of our statute there could not, in any event, be both a recovery for the use of the estate of Mildred and a recovery for the use of the father and mother of Wilcox. That was not the purpose of appellant in naming all of the next of kin of Wilcox in the declaration, but the real purpose was to present all the facts in the additional counts, with a view to have determined by the court whether or not there was a right of recovery for the benefit of anyone. Appellees seem to have acquiesced in that manner of pleading, and they have definitely stated in their briefs that the issues of law have been correctly presented by the pleadings, and they seek to take no advantage of the declaration by their special demurrer because the declaration does state all the names of the next of kin and do not challenge the arguments of appellant that the demurrer to the additional counts should be sustained if a good cause of action for anyone is stated in the additional counts. We will consider that to be the real question presented by the record for decision.

The real and decisive questions presented for our consideration arise on the contention of appellant, on the one hand, that on the death of Mildred Wilcox the action survived either for the benefit or use of the estate of Mildred or for the benefit of the parents of Percy C. Wilcox, and the contention of appellees, on the other hand, that the cause of action abated. For the purpose of determining these questions it will be necessary to consider the statute and its character and scope as determined by the decisions of this court.

The act contains two sections, and as originally passed by the legislature it is worded and punctuated as follows:

Sec. 1. "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or

default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case the person who, or company, or corporation, which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

Sec. 2. "Every such action shall be brought by and in the names of the personal representatives of such deceased person, and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages as they shall deem a fair and just compensation, with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased person, not exceeding the sum of five thousand dollars: *Provided,* that every such action shall be commenced within two years after the death of such person."

The statute was amended May 13, 1903, by reducing the time allowed to begin the action to one year after the party was injured and by increasing the amount of damages that might be recovered to a sum not exceeding $10,000. The punctuation of the amended act differs very considerably from that in the original act, but such change in punctuation does not change the meaning of any sentence of the act. (Laws of 1853, p. 97; Laws of 1903, p. 217.) This statute is substantially a copy of a statute of New York enacted in 1847, which latter statute is also a substantial copy of the first two sections of 9 and 10 Vict. chap. 93, enacted in 1846. (See Cooley on Torts,—1st ed.—p. 263, for Stat. 9 and 10 Vict. known as Lord Campbell's act.)

It was said in *City of Chicago* v. *Major,* 18 Ill. 349, that our statute gives a new cause of action unknown to the common law and should not be extended beyond the fair import of the language used, but that it would be difficult to do that because the language is very broad and comprehensive, embracing, in direct and positive terms, all cases where, if death had not ensued, the injured party could have maintained an action for the injury. It was held in that case that the sole object of the first section of the statute was to create the right of action and to specify in what cases or for what wrongs it might be brought; that the purposes of the second section were to determine by whom or in whose name, and to declare for whose benefit, the action should be brought or how the money recovered should be disposed of or distributed. It was also held that the personal representative of the party injured and killed should bring the action, not in the right of the estate but as trustee for those who had a more or less direct pecuniary interest in the continuance of the life of the deceased and who had some claim, at least, upon his or her natural love and affection, and that the legislature intended that the fruits of the judgment should be distributed among those to whom his personal estate would descend, after the payment of debts, in the absence of a will, and that the creditors of the deceased do not get any benefit from it.

In *Chicago, Peoria and St. Louis Railroad Co.* v. *Woolridge,* 174 Ill. 330, it was held that under previous decisions of this court the words "next of kin" mean those standing in that relation in a technical sense; that if the next of kin are collateral, it is a material question whether they were in the habit of claiming and receiving pecuniary assistance from the deceased. If they were not, they can only recover nominal damages. If they were lineal, the law presumes pecuniary loss from the fact of death. The amount of recovery is limited to the "pecuniary loss," and the evidence should be confined exclusively to that loss. Pecuniary

loss is held, as to lineal kindred, to mean what the life of the deceased was in a pecuniary sense worth to them, and such loss is to be determined from proof of the personal characteristics of the deceased, his prospects in life, his mental and physical capacity, his habits of industry and sobriety, and the amount of his usual earnings, as proof of what he might in all probability earn for the future support of his wife and children. The amount to be recovered is the pecuniary value of such addition to his estate as the deceased in reasonable probability would have made and left, if his death had not been wrongfully caused. It is to be estimated by the jury from all the facts and circumstances proved. It was further held in that case that the poverty, wealth, helplessness or dependence of the lineal next of kin is immaterial on the question of the amount of the recovery under the statute. Those features are not at all to be considered in measuring or estimating the loss sustained or in determining the liability, in case of lineal kindred, when there is death caused by a wrongful act. It is also wholly immaterial whether such next of kin had or had not other pecuniary resources after his death.

It has many times been held by this court that it is necessary in such cases as above for the plaintiff to allege and prove that the deceased left a widow or a husband and next of kin, and that if he left no widow or husband and next of kin, or next of kin in any degree, there could be no recovery for such death. The words "next of kin" are used as a technical legal phrase in their ordinary technical sense. (*Dukeman* v. *Cleveland, Cincinnati, Chicago and St. Louis Railroad Co.* 237 Ill. 104.) The term "next of kin," in its technical, legal meaning, means persons nearest in degree of blood surviving. In its practical use the term has come to mean, ordinarily, those persons who take the personal estate of the deceased under the statutes of distribution. The English courts hold that the primary and proper meaning of "next of kin" is the nearest in proximity of blood

living at the death of the person whose next of kin are spoken of. (2 Pope's Legal Definitions, p. 1025.) Under our statute on descent (Smith's Stat. 1925, chap. 39, sec. 1, p. 979,) personal property descends first to the deceased's children and their descendants in equal parts, the descendants of the deceased's child or grandchild taking the share of its deceased parents in equal parts. When there is no child of the intestate or descendants of such child, and no widow or surviving husband, then the property descends to the parents, brothers and sisters of the deceased and their descendants, etc. Under the holdings of this court and under the statute it is clear that on the death of Percy C. Wilcox a cause of action arose for his death and was lodged in his personal representative for the benefit of Mildred Wilcox. The civil law rule that parents and children stood in the same degree of kindred was changed in this State by the adoption of the Descent act in 1829, and such civil law rule, which was the common law doctrine, has been wholly superseded by statute in this State and parents have been reduced to the second degree of kindred. (*Collins* v. *Metropolitan Life Ins. Co.* 232 Ill. 37.) Although Mildred only survived her father by thirty minutes, she was at his death his next of kin and his only next of kin, and there could be no recovery for the father and mother of the deceased, who were his next of kin in the second degree, and they could not acquire any interest in any judgment recovered unless the cause of action survived to the personal representative of Mildred, and the amount recovered would be distributed to them as the heirs of Mildred. The next of kin of any deceased person are definite blood relatives or a definite class of blood relatives or kinsmen in existence at the time of the death of the deceased who would take his personal property in case he died intestate. Such next of kin, or the survivors of them, continue to be the deceased's next of kin. In case of the death of all such next of kin others may take or inherit the property of the deceased, but

they will take as heirs of the deceased's next of kin but
not as his next of kin. Under the statute the suit is to be
brought for the benefit of the known and surviving next of
kin of the deceased, and in case of the death of all such next
of kin, as in this case, the suit must abate unless it survives
for the benefit of the legal representatives of the last sur-
viving next of kin. In our judgment any other construction
of the statute would do violence to its provisions.

At common law, actions founded on tort did not sur-
vive. (*Bunker* v. *Green,* 48 Ill. 243; *Knox* v. *City of Ster-
ling,* 73 id. 214.) Under the common law rule the death
of either party at any stage of the proceedings abated the
action. (*Olson* v. *Scully,* 296 Ill. 418.) The general rule
of the common law that actions *ex delicto* abated on the
death of either party was modified by the statute of 4 Ed-
ward III, chap. 7, so as to give an action in favor of a per-
sonal representative for injury to personal property. That
statute became a part of the common law of this State,
which changed the common law only so far as it related
to injury to personal property. (*Reed* v. *Peoria and
Oquawka Railroad Co.* 18 Ill. 403; *Shedd* v. *Patterson,*
312 id. 371.) The classes of actions which survive in this
State have been further enlarged by section 123 of the Ad-
ministration act, passed in 1872, to-wit: "In addition to
the actions which survived by the common law, the fol-
lowing shall also survive: Actions of replevin, actions to
recover damages for an injury to the person (except slander
and libel,) actions to recover damages for an injury to real
or personal property, or for the detention or conversion
of personal property, and actions against officers for mis-
feasance, malfeasance or non-feasance of themselves or
their deputies, and all actions for fraud or deceit." This
latter statute is regarded by the decisions of this court as
supplanting or taking the place of 4 Edward III, chap. 7,
although the English statute may have been in force in this
State previous to the passage of the Administration act. In

*Jones* v. *Barmm,* 217 Ill. 381, it was expressly held that an action in tort for hindering, damaging and interfering with the plaintiff's business did not survive under the Administration act because the damage occasioned was not to any particular piece of personal property owned by the plaintiff but was a damage to his business, which was only intangible property, which could not be seen with the naked eye, and that said statute was only intended to apply to damages to tangible articles and things movable,—to chattels,—as distinguished from actions for damages to one's business. That decision was approved in the case of *Shedd* v. *Patterson, supra,* which was an action to recover damages for the malicious prosecution of a series of suits,—five in equity and four at law,—disputing and slandering the title of Shedd to a leasehold estate in valuable property in Chicago. It was held in that case that on the death of Shedd, the sole plaintiff, the action for malicious prosecution abated, and that under the survival statute the damages to personal and real property therein mentioned had reference to damages to tangible property, real and personal, and not damages to intangible property or property in its most general sense. Our act on abatement of actions does not furnish any solution of the questions before us in this case. Under that act the right to continue the prosecution of a suit upon the death of a sole plaintiff to his heirs or legal representatives is limited to cases where the cause of action survives. (Hurd's Stat. 1921, chap. 1, sec. 10.)

Prior to the enactment of the survival statute (Administration act, sec. 123,) an action for personal injuries abated with the death of the injured party in all cases, but since the passage of the survival statute, and under it, if the injured person dies from some other cause than the injury the action for the injury to his person survives to his personal representatives. (*Holton* v. *Daly,* 106 Ill. 131; *Chicago and Eastern Illinois Railroad Co.* v. *O'Connor,* 119 id. 586; *Devine* v. *Healy,* 241 id. 34; *Wilcox* v. *International*

*Harvester Co.* 278 id. 465; *Pease* v. *Rockford City Traction Co.* 279 id. 513.) The Injuries act of 1853 gave a new cause of action where the injury resulted in death. In cases where the injury resulted in death the common law action abated, but under the act of 1853 the right of action was continued in the name of the legal representatives of the deceased for the benefit of the widow and the next of kin of the deceased. This continued action is a new suit unknown to the common law and is purely statutory. (*Hazel* v. *Hoopeston-Danville Bus Co.* 310 Ill. 38.) It is not a statute enacted for the purpose of reviving the action the deceased had at common law, but is, as already indicated, a statutory action of the character and scope that we have above indicated. There is no provision in this statute that in case of death of the sole surviving next of kin the suit may be maintained in the name of the legal representatives of the party killed, for the benefit of the estate of the sole surviving next of kin. The survival act does not provide for the survival or further continuance of the action in case of the death of the sole next of kin, and there is no other statute in this State that does so provide.

Causes of action arising from torts to the person or character, where the injury or damage is confined to the body or feelings, are not assignable. Where the right of action is so entirely personal that a person cannot by contract place it beyond his control the action will not survive. As a general rule, assignability and survivability of causes of action are convertible terms, but to this rule there are the exceptions above stated. (*North Chicago Street Railroad Co.* v. *Ackley,* 171 Ill. 100; *Olson* v. *Scully, supra; Bradley* v. *Federal Life Ins. Co.* 295 Ill. 381.) It is also a well settled rule in this State that a cause of action created by statute does not survive unless declared so to do by the statute itself or unless provision for its survival is made by some other statute. *Olson* v. *Scully, supra; Selden* v. *Illinois Trust and Savings Bank,* 239 Ill. 67.

The action in question in this suit cannot be held to survive by the common law because it is purely a statutory action, which must be pursued in the mode and within the limitations prescribed by the statute. It is not a suit to recover damages to personal property or to real estate within the meaning of the survival act, but is a suit to recover for a loss of the increase in money value to the estate of the deceased, which the deceased would in all probability have made had he lived, for the benefit and use of his widow and next of kin. It may be said to be a suit for recovery of damage or loss to a property right in its most general sense, but it is not a suit to recover loss to personal or real property and is not assignable under the previous holdings of this court. On the death of Mildred Wilcox, the only survivor of next of kin in the first degree, the action was extinguished or abated. After her death the action could not be prosecuted for the benefit of the father and mother of Percy C. Wilcox, because they are not of "the next of kin of such deceased person," for whose exclusive benefit "every such action shall be brought" and to whom the amount recovered "shall be distributed," according to the provisions of the second section of the Injuries act. A declaration alleging that the father and mother were the "next of kin" of Wilcox could not be sustained, because such an allegation could not be proved.

We have not been able to find any reported case in this State or in this country on all-fours with the facts in this case,—no case in which by the same wrongful act a whole family were killed, and the father, for whose wrongful death the action was instituted, was survived by his next of kin only a few minutes. In the case of *Meekin* v. *Brooklyn Heights Railroad Co.* 58 N. E. (N. Y.) 50, the party wrongfully killed was a small child, who left surviving its father as sole next of kin, and also left five brothers and six sisters, who, had the father not survived, would have been its next of kin. The father was appointed adminis-

trator and brought suit under a statute which we have already stated is substantially the same as our Injuries act of 1853, and pending the suit the father died, but his death was not a result of the wrongful act. Another party was appointed administratrix in lieu of the father, and the question certified for decision to the New York Court of Appeals was, "Does an action to recover damages for negligently causing the death of his intestate survive the death of the administrator, who was also the father and sole next of kin of the deceased, where such intestate left her surviving other persons, who, had such father not survived, would have been next of kin of such deceased?" In that case the court answered the question in the affirmative, holding that the action did so survive. It appears, also, that there was a survival statute in New York, or another statute that gave a right of action for wrongs done to the property rights or interests of another, and that on the death of a plaintiff in such suit the action survived to his administrator or executor. The court regarded the Injuries statute as giving to the administrator of the deceased a right of action for the benefit of the father and next of kin for a loss or injury to his property rights, and accordingly held that the suit before the court was of the character of suits in that State where the action survived to the legal representatives of the plaintiff on his death. In this State our survival statute does not mention, as one which survives, any suit or action to recover damages for "wrongs done to property rights or interests of another." Such rights or interests are intangible property rights as distinguished from chattel property or property that can be seen and handled. We cannot follow the New York decision and depart from the former decisions of this court, as already explained, and the difference in the provisions of our survival statute and the survival statute of New York is a sufficient ground for refusing to follow the New York decision, notwithstanding the fact that we have great respect for that court

and its decisions and usually follow them when applicable to our laws. We recognize the doctrine that a statute adopted from another State is usually adopted with the construction which the courts of that State have placed upon it before such adoption, but a construction of such courts since such adoption is not binding, particularly where the holdings in such courts are aided and based on a statute other than the one adopted and differing from our own on the same subject. The *Meekin case* was decided by the New York Court of Appeals on October 2, 1900, long after the adoption of our Injuries act, and for that reason that decision is not controlling in this case, although we would regard it as very persuasive if it were not in conflict with the decisions of this court and based on laws differing from the laws of this State. *Rhoads* v. *Chicago and Alton Railroad Co.* 227 Ill. 328.

We have examined the decisions and holdings in other jurisdictions that apparently support the New York decision in the *Meekin case* for the same or similar reasons, and also a number of decisions in still other jurisdictions to the effect that on the death of all of the next of kin surviving the deceased the action abates. In the case of *Morris* v. *Spartanburg Railroad Co.* 49 S. E. (S. C.) 854, it is held that if all the beneficiaries or next of kin in the first degree die after the death of the injured party, such action may be continued for the benefit of the next succeeding statutory class who would have taken if the next of kin had not survived, or that a new cause of action may be brought for their benefit. That decision is not applicable in this State, for the reason that in South Carolina the action is given in the name of the administrator of the injured or deceased person for the benefit of (1) the wife or husband or child or children, (2) parent or parents, and (3) heirs-at-law or distributees as may be dependent on him for support. For the reasons already stated the decisions

of other States that differ from ours are not applicable, and for those reasons we do not consider it necessary to further discuss the holdings of other courts.

The judgments of the circuit and Appellate Courts are affirmed.

*Judgment affirmed.*