(Nos. 4901 and 4902—Consolidated▮

MICHAEL B. CARR, Individually, and as Administrator of the Estate of MICHAEL J. CARR, Deceased; AMERICA FORE INSURANCE GROUP, Subrogee of MICHAEL B. CARR, Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed January 10, 1967.*
*Opinion on Rehearing filed June 13, 1967.*

JOHN J. SULLIVAN and WILLIAM J. HARTE, Attorneys for Claimants.

WILLIAM G. CLARK, Attorney General; SHELDON K. RACHMAN, Special Assistant Attorney General, for Respondent.

Perlin, C.J.

Claimants seek recovery for damages arising out of an automobile accident on February 23, 1958, when the motor vehicle, which was owned and operated by Michael B. Carr, one of the claimants in this action, went off the highway, and struck a tree on Route No. 34 about one-half mile east of Oswego in Kendall County, Illinois. Michael J. Carr who was riding as a passenger was killed, and Michael B. Carr, his son, was injured. The America Fore Insurance Company sues as subrogee of Michael B. Carr for the amount paid for damages to the automobile. Michael B. Carr requests the sum of $25,-000.00 in his own behalf, and $25,000.00 as Administrator of the Estate of Michael J. Carr.

From the testimony it appears that claimants were traveling westbound on Route No. 34 about one-half mile east of Oswego in Kendall County, Illinois. The weather was clear, but snow was on the ground, and the temperature was about 30 degrees. The highway was generally dry and free of ice and snow. As the vehicle approached a curve in the highway, just east of Waubansie Creek, the highway was covered with a patch of ice approximately 75 feet long, which extended into both lanes of the road.

Michael B. Carr testified that on the day in question he had left his home in Chicago, Illinois around 6:00 A.M. with his father in order to travel to Princeton, Illinois. He was traveling about 50 to 55 miles per hour about 1,000 yards from the point of the accident. He saw no warning signs, and came upon the curve without warning. As soon as he hit the curve he saw that ice was covering the road, applied his brakes, and then took his foot off the brakes as soon as he reached the ice. He then

went off the left side of the road, through a fence, down an embankment, and struck a tree.

He further stated that he had never previously driven on Route No. 34, that there were no other dips or rises in the highway, and that the roadway was dry. The curve in question was below the level of the road, and there was ice covering the entire highway at that point.

Edward and Norman Strope who lived in the farmhouse, which was located in the center of the curve, testified that before the occurrence a sign warned westbound motorists of the approach of the curve, and was normally situated east of the curve. However, according to Norman Strope, a week before the accident the sign had been knocked down by a "snowplow from the State Highway Maintenance Division pushing the snow off to the side of the road."

Byford Goldman, Jr., testified that on the morning of February 22, 1958 he also had an accident on the curve in question, and that, prior to entering the curve, he did not see a warning sign. He stated that there were no cinders on the ice at that time.

Frank Willman, the Deputy Sheriff who investigated the Goldman accident, described the curve as having a patch of ice about 75 feet in length covering both lanes. He observed no cinders or salt on the ice, and reported the condition to the office of the Sheriff.

On the morning of the following day, February 23, 1958, Willman investigated the accident, which involved claimants. He again observed the ice, and noted that there were no cinders or salt on the curve. According to Willman, the curve sign was down at the time of both

accidents, although for many years there had been a "curve ahead" sign about 200 feet east of the curve.

Willman further testified that the portion of the highway in question had a tendency to ice up for at least 4 to 5 years before the accident. He stated that he had traveled Route No. 34 for 10 to 15 years, and that, when the curve is approached from the east going west, the pavement on the curve is not in view because the road turns and drops down. He also said that the curve had a tendency to freeze when there was no other ice on Route No. 34, because it was lower than the surrounding land, and the snow, which was deposited by the Highway Department, would melt during the day, and run across the highway. It would then freeze at night.

Paul Dwyer, a Deputy Sheriff, testified that in February, 1958, he investigated an accident involving one Phillip Stein. This occurred on the curve approximately three and one-half hours before the Carr accident. He, too, observed the icy condition of the highway.

There was also testimony of several other minor accidents, which occurred on the curve immediately before the Carr accident.

William A. Maier, Sheriff of Kendall County in February, 1958, testified that, immediately after receiving the report of the Goldman accident, and about 24 hours prior to that of the Carrs, he reported the icy condition of the highway, the location, and the fact that an accident had occurred because of the condition to Bill Wheeler, District Supervisor of the State Highway Maintenance Department.

Wheeler testified that he could not say when cinders were last spread on the curve prior to February 23, 1958.

He was not sure whether or not the curve sign was standing on February 23, 1958, and stated that the "snowplow could have clipped (the sign)." He further stated that it was part of the duties of the road patrol men to spread sand and cinders over the highway.

Claimants submit that the State of Illinois was negligent in that it failed to replace the warning sign, which was knocked down by the maintenance truck of the State a week before the occurrence; it failed to erect a sign warning the traveling public of the icy pavement where the condition had been prevalent at the curve for at least 5 years before the accident in question; it failed to remove the cause of the ice, or to remove the danger by speading sand, salt and cinders; and, that the State is liable for the maintenance of a nuisance.

Before recovery may be granted claimants must prove by a preponderance of the evidence: (1) freedom from contributory negligence; (2) the negligence of respondent; and, (3) the negligence of respondent was the proximate cause of the damage for which recovery is sought.

The State has a duty to exercise ordinary care in maintaining the State highways in a reasonably safe condition. In *Bovey* vs. *State of Illinois*, 22 C.C.R. 95, the State was held liable for an accident caused by the icy condition of a bridge flooring where from the evidence it clearly appeared that respondent had knowledge of its tendency to ice more rapidly than other bridges and roadways in the area. The Court stated:

"It was not just the mere existence of ice, which brought about the accident in question, but it was primarily due to the nature of the bridge being subject to a quick freeze at a time when there was no evidence of ice, snow, or extremely cold weather in the general

area surrounding the bridge, and even other bridges in the same area were not slippery, thus creating a trap for the unwary traveler."

The State was also held liable for an accident, which was caused by an unusual accumulation of ice on the highway in the case of *Burgener* vs. *State of Illinois,* No. 5061, opinion handed down on September 25, 1964, although cinders and salt had been spread, since it did not remedy the situation, and there were no warning signs. The Court held:

"While the State is not liable for injuries from the natural accumulation of ice and snow (*Levy* vs. *State of Illinois,* 22 C.C.R. 694), it may be held liable for failure to warn the traveling public of the dangerous condition of a highway caused by an unusual accumulation of ice, where it has had notice of such condition."

The instant case presents the fact of an unusual accumulation of ice while the surrounding area was dry. Claimant has proved that respondent was negligent in that it knocked over the only sign warning of the curve, and failed to replace it, although the curve was not visible to oncoming traffic; that respondent had actual notice of a dangerous condition, which had, in fact, existed for at least 4 or 5 years; and, that it had actual notice of the dangerous icy conditions existing on the curve within the 24 hours immediately preceding the accident in question, and failed to remedy the danger by spreading cinders or by placing warning signs in the proper place. There is no evidence that Michael B. Carr, one of the claimants in this matter, was in any way contributorily negligent.

Michael B. Carr has incurred special damages in the amount of $4,747.27, including $1,197.27 for medical expenses, $3,500.00 for loss of income, and $50.00 for charges against him by his insurance carrier for ''deductible''.

Claimant sustained fractures of the leg and ankle, and as a result had to undergo surgery. The ankle frac-

ture required the insertion of a metallic screw, which was later removed. He also received a cut on his head, which required suturing. As a result of his ankle injury he still suffers pain, and is limited in doing work, which entails standing or walking for a long period of time. He claims that the accident in question caused an increase in the degree of limp, which he has had in his left leg since childhood as a result of cerebral palsy. He was unable to work for approximately three and one-half months, and could work only part time for an additional two months. His automobile was damaged in the amount of $1,445.00.

The maximum amount allowable "to or for the benefit of any claimant" under the statute in effect in February, 1958 was $7,500.00. Therefore, Michael B. Carr, claimant, and the America Fore Insurance Group, as subrogee for property damage to the automobile owned by Michael B. Carr, may receive awards, the total of which cannot exceed $7,500.00. Accordingly, Michael B. Carr is awarded the sum of $6,055.00, and America Fore Insurance Group is awarded the sum of $1,445.00.

Burial expenses for Michael J. Carr amounted to $1,027.00. Under the Wrongful Death Act, Chap. 70, Par. 2, Ill. Rev. Stats., only pecuniary damages may be be recovered for the next of kin. Damage for loss of support is not applicable in the instant case, since the death of Michael J. Carr's only dependent, Mrs. Michael J. Carr, his wife, occurred before the hearing. Therefore, Michael B. Carr, as Administrator of the Estate of Michael J. Carr, is awarded the sum of $1,027.00.

OPINION ON REHEARING

PERLIN, C.J.

Claimants have requested that the Court reconsider the damages heretofore awarded in relation to the claims of Michael B. Carr, and Michael J. Carr, deceased, in the above entitled consolidated cases. In its opinion, the Court stated that the maximum statutory amount allowable under the Court of Claims Act "to or for the benefit of any claimant" was $7,500.00 in February, 1958, the date of the accident in question.

It appears that during the Seventieth General Assembly in 1957, three amendments to the Court of Claims Act were passed, the second being an amendment to raise the statutory limitation to $25,000.00, which was approved on July 9, 1957. The third amendment, approved July 11, 1957, restates the prior limitation of $7,500.00. However, it is the rule that different amendments approved at the same session of the legislature should each be given effect unless clearly inconsistent. (*S. Buchsbaum and Company* vs. *Gordon*, 389 Ill. 493, 59 N. E. 832.) It is a further rule that, when different amendments are introduced, each must set forth the whole section as it previously appeared, and that interpretation depends upon legislative intent. We must conclude, therefore, that the Court of Claims Act at the time of this accident in 1958 had been effectively amended to include a statutory limitation of $25,000.00.

Claimants further contend that an award should have been made in favor of the widow of Michael J. Carr, deceased, for loss of support although she herself was deceased at the time of the hearing. It is undisputed that she would have been entitled to the sum of $54.00 per month had she lived.

In the recent case of *McDaniel* vs. *Bullard*, 34 Ill. 2d 487, 216 N. E. 2d 140, the Supreme Court held that an

action for wrongful death did not abate upon the death of the beneficiary, but could be maintained for the benefit of the estate of the beneficiary. In so holding the Court stated:

"Today, damages for most torts are recognized as compensatory rather than punitive, and there is no reason why an estate that has been injured or depleted by the wrong of another should not be compensated whether the injured party is living or not."

*McDaniel* specifically overruled *Wilcox* vs. *Bierd*, 330 Ill. 571, 162 N.E. 170, which held that common law actions founded on tort did not survive.

Accordingly, Michael B. Carr is hereby awarded the sum of $12,500.00, and $1,998.00 is awarded for the benefit of the widow of Michael J. Carr, deceased. The awards of $1,445.00 to the America Fore Insurance Group and $1,027.00 to Michael B. Carr, as administrator of the Estate of Michael J. Carr, for burial expenses remain as set forth in the original opinion.