(No. 19697.

ELIZABETH JANE GENSLINGER, Exrx., Defendant in Error, *vs.* THE NEW ILLINOIS ATHLETIC CLUB OF CHICAGO, Plaintiff in Error.

*Opinion filed April 17, 1930—Rehearing denied June 5, 1930.*

DeYoung, J., took no part.

Sims, Godman & Stransky, (Franklin J. Stransky, of counsel,) for plaintiff in error.

Hume & Kennedy, and Cutting, Moore & Sidley, (Charles S. Cutting, and Frank L. Hume, of counsel,) for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here on *certiorari* to review the judgment of the Appellate Court for the First District affirming the judgment of the circuit court of Cook county entered against plaintiff in error in the sum of $194,600. This suit was filed by defendant in error as executrix of the last will and testament of Charles H. Genslinger, deceased. The declaration as first filed consisted of fourteen counts, which charged wrongful cancellation and forfeiture by plaintiff in error of 973 certificates of membership owned and held by Charles H. Genslinger in his lifetime in the New Illinois Athletic Club, plaintiff in error, hereinafter referred to as the club. Pleas were filed by the club averring that the action of plaintiff was not commenced within a year from the death of Genslinger and that the cause of action did not survive his death. Defendant in error demurred to those pleas. Her demurrers were overruled, and, abiding the same, judgment was entered thereon against her. She appealed to the Appellate Court First District, (229 Ill. App. 428,) where it was held that the declaration stated a good cause of action which was not open to a defense of the Statute of Limitations or want of survival of the cause of action, and reversed the judgment of the circuit court and remanded the cause, with directions to sustain the plaintiff's demurrer to the pleas. On remandment the plea of general issue, with notice of special defenses, was filed. Defendant in error then filed an additional count in trover charging the conversion of the certificates of membership to the damage of the plaintiff. By order of court the pleas to the other counts stood as pleas to the additional count. On the trial of the cause before a jury a verdict for $194,600 was returned and judgment entered thereon. The club appealed directly to this court on the ground that constitutional questions were involved. This court, however, finding no constitutional question in the case, transferred the same to the Appellate Court

for the First District, (332 Ill. 316,) which court, as we have seen, affirmed the judgment of the circuit court.

Counsel in the case by able briefs have argued many questions, some of which are no longer open in this lawsuit. In order to understand and differentiate between the questions at issue here and those previously settled it is necessary to briefly review the proceedings in this controversy, which has in one form or another spent more than sixteen years in the courts of this State. Since by stipulation of the parties there were introduced in evidence in the trial court the various pleadings, judgments and decrees of the circuit and Appellate Courts in the different phases of the controversy between these parties, we have before us in this record the facts necessary to a brief review of those proceedings.

The New Illinois Athletic Club is a social organization incorporated in 1904 under the laws of Illinois as a corporation not for pecuniary profit. Charles H. Genslinger, whose business was that of promoting the organization of clubs of various kinds, was prominently identified with the organization and promotion of this club and was its first secretary—a position which he held until August, 1906. It appears that an agreement had been entered into between Genslinger and others organizing the club concerning compensation for his services rendered and to be rendered, and on December 3, 1904, the board of directors of the club adopted a resolution ratifying that agreement and fixing his compensation. In the controversy which arose between the parties thereafter the club claimed that this compensation was fixed at the sum of six per cent of all moneys received for memberships up to 8000 in number. Genslinger claimed that in addition to this, for services performed and to be performed, he was to receive 1000 paid-up, transferable certificates of membership when the membership of the club had reached 5000, the first transfer of such certificates of membership from him to be exempt from the

usual transfer fee. Genslinger, on resigning as secretary, was voted a life membership in the club, which he retained until his death. As the result of the controversy between Genslinger and the club, the former thereafter, in 1913, filed in the municipal court of Chicago a suit against the club for $200,000 on account of his contract for services. A bill was filed to restrain that suit and for an accounting. Genslinger in his answer joined in the prayer for accounting and the suit in the municipal court appears not to have been further prosecuted. The bill, answer and a cross-bill filed by Genslinger made up the issues of controversy between the parties in that action. The circuit court found the issues against Genslinger. On appeal to the Appellate Court that court reversed the decree of the lower court and directed that a decree be entered in favor of Genslinger for the sum of $23,683.52 unpaid compensation under his contract up to and including April 30, 1915, and that the club be directed to issue to Genslinger 1000 memberships claimed by him in his cross-bill. (211 Ill. App. 220.) The Appellate Court declined to fix the value of the certificates, stating that it would be difficult so to do and that they were not required to fix such value. A petition for *certiorari* to this court was denied and the judgment of the Appellate Court became final.

The issues of fact involved in that case and settled by it were, whether the contract was as argued by Genslinger or by the club; whether the membership in the club had reached 5000, as provided by the contract as urged by Genslinger, and the amount due Genslinger up to April 30, 1915, under his contract for six per cent of moneys received on sale of memberships. These matters were decided for Genslinger and are no longer open. Those proceedings establish the right of Genslinger to these 1000 certificates, and that matter cannot be attacked here.

Pursuant to a decree entered by the circuit court on remandment of the cause by the Appellate Court in the

equity case, the club on November 14, 1918, delivered the 1000 certificates to Genslinger's attorney. It is argued by counsel for defendant in error here that the record does not show that these certificates were delivered prior to November 25, 1918, one day before the date of the action of the club upon which the defendant in error's claim is based. Some question was raised by Genslinger's attorneys as to amendments which should be placed thereon and which were added. The certificates were, however, delivered on November 14 and remained in Genslinger's possession from that time on. The fact that an amendment to the certificates was later added does not affect the date of delivery. The club also paid the sum of $23,683.52. These certificates read as follows: "This is to certify that Charles H. Genslinger is a member of the New Illinois Athletic Club of Chicago, in full and regular standing at the date hereof. The membership hereby represented is subject to dues and to all by-laws, rules and regulations. This membership is transferable on the books of the corporation upon assignment and surrender of this certificate in accordance with the provisions of the constitution." On the back of each certificate was a blank form of assignment and power of attorney for transfer on the books of the club in accordance with the provisions of the by-laws. On objection of Genslinger's attorneys there was added to the certificate the words: "This certificate is fully paid up as of date of issue and is not subject to transfer fee on first transfer from Charles H. Genslinger." These certificates did not state whether they were to represent life, resident or non-resident memberships or other memberships provided by the by-laws. Section 1 of article 3 of the by-laws as set out in the declaration and in the stipulation of facts filed by the parties, provides for eight classes of membership: honorary, life, resident, non-resident, athletic, army and navy, junior and intermediary memberships. By section 18 of said by-laws it is provided that membership cer-

tificates shall be issued only to resident, non-resident and life members who have paid their admission fee in full.

At the time these certificates were issued to Genslinger section 16 of the by-laws provided: "Each resident member shall pay annual dues of $60, payable quarterly," etc. Section 17 provided: "Each non-resident member shall pay annual dues of $30, payable semi-annually," etc. The transfer fee fixed by section 19 of the by-laws was $200 for life membership, $100 for resident membership and $25 for non-resident membership. On November 26, 1918, by a vote of the membership of the club an assessment of $10 was directed to be levied on each resident and non-resident certificate of membership theretofore issued and not canceled; also, pursuant to notice given, section 16 of article 3 of the by-laws was amended to provide: "Each resident member and each owner of record of each outstanding and uncanceled resident certificate of membership in this club shall pay annual dues of $80 upon each certificate of membership owned by him as shown by the records of the club." Section 17 of the by-laws was also amended to provide that each non-resident member and each owner of a non-resident membership certificate shall pay annual dues of $30 on each non-resident membership certificate standing of record in his name. The resolution adopted at the annual meeting pertaining to the assessment of $10 against each resident and non-resident certificate of membership recited that it was for the purpose of meeting the sum of $23,683.52 required by the decree of the court to be paid to Genslinger.

Section 18 of the by-laws prior to the annual meeting of November, 1918, provided, as alleged in the declaration and shown by the stipulation of facts: "No person shall own or have an interest in more than one membership at any one time except in case of a resident member desiring to become a life member or a non-resident member desiring to become a life or resident member." At this annual meeting this section was amended to further provide, "and ex-

cept Charles H. Genslinger, to whom the court has ordered 1000 certificates of membership to be issued." Genslinger took the position that the assessment against his certificates was illegal and that his certificates were not subject to dues and refused to pay either. On June 24, 1919, the board of governors of the club passed a resolution reciting that Genslinger was indebted to the club for special assessments on membership certificates owned by him, in the sum of $10,000, with a war tax of $1000 thereon, and that he was indebted to the club for dues on such membership certificates in the sum of $53,333.33, with the war tax of $5333.33 thereon; that his name had been posted on the bulletin board as delinquent, in accordance with the by-laws, for more than thirty days after the indebtedness became due, and that therefore the 1000 membership certificates issued to him were canceled. On December 10, 1918, prior to the cancellation and forfeiture of these certificates, the attorneys for Genslinger notified the club that in their opinion the assessment against the certificates had not been validly made, for the reason that the certificates were not delivered to Genslinger until November 25, 1918, and for the further reason that he had not, as holder of these certificates, received the notice required by the by-laws of the proposed amendment thereto, and that the club had no power to levy assessments against those certificates. The club replied that the certificates themselves showed they were subject to dues and that the record of the club showed delivery of the certificates on November 14, 1918, and that notices of the proposed amendments were mailed to all members of the club, including Genslinger, more than five days before November 26, 1918.

Genslinger died on September 15, 1920, still in possession of the certificates, with the exception of 27 which he gave to his attorney and which were by the attorney given back to the club without consideration therefor. It is stipulated that Genslinger did not at any time request the club,

or any of its officers, to accept a new member who had purchased a certificate from him or to transfer any certificate on the books of the club. Upon Genslinger's death, his widow, defendant in error here, was appointed executrix of his last will and testament, and, as we have seen, filed the suit now before us. The declaration was filed on November 14, 1921, one year and sixty days after his death.

Plaintiff in error has assigned numerous errors on the part of the trial or Appellate Court, all of which group themselves about a few principal points: (1) That trover will not lie for the conversion of certificates of the character here involved; (2) that the action did not survive and was not brought within the time limited by section 19 of the Statute of Limitations; (3) if the certificates issued to Genslinger are to be treated as memberships in the club they were subject to dues and assessments, and the action of the board of governors in canceling them for non-payment of dues was in accordance with the by-laws and was valid; (4) that if they are not memberships the trial court erred in permitting to be applied to them the value of memberships as the measure of damages to defendant in error in this case; (5) erroneous instructions; and (6) prejudicial remarks of court and counsel.

It is necessary, first, to determine the status of these certificates, and in so doing the relationship of these parties must be considered. Genslinger's contract with the club, which is represented by a resolution of the board of directors on December 3, 1904, was a matter of sharp controversy in the chancery proceedings first filed, the club contending that the provision that Genslinger should have 1000 paid-up certificates of membership when the membership of the club reached 5000 was inserted by Genslinger in the records of the club by tearing out the page of the record on which the original resolution was recorded and inserting therein a page bearing that resolution as showing an agreement to issue 1000 memberships to Genslinger. This

was denied by Genslinger in that case and was decided adversely to the contention of the club and is no longer an issue in the case, so that we proceed to a consideration of the relations of the parties as shown by the evidence of circumstances and the following resolution:

"That at a meeting of the directors of said corporation held on December 3, 1904, the subject of the compensation of said Charles Henry Genslinger, cross-complainant, for his services in promoting and carrying out the organization of said club was discussed, and the following resolution fixing his compensation, was passed by the unanimous vote of all the directors of said corporation:

" 'Whereas, the details of organization and work in obtaining members, and in otherwise carrying out the formation of the New Illinois Athletic Club of Chicago, have been done largely by Charles H. Genslinger; and whereas, prior to the rendering of such services by said Genslinger certain agreements were entered into between the said Genslinger and the parties organizing and forming the said New Illinois Athletic Club of Chicago for compensation for the services of said Genslinger in connection with such organization and formation; and whereas, the said Genslinger is performing all such services as were expected of him and will have fully performed and carried out his contract when 5000 members shall have been secured:

" '*Be it resolved,* that the New Illinois Athletic Club of Chicago recognize and approve, and it does recognize and approve and ratify, the agreements hereinbefore entered into on its behalf by those who originated and organized it with said Genslinger.

" '*Be it further resolved,* that 1000 fully paid and transferable certificates of membership be issued to the said Genslinger, and the proper officers of the club are hereby authorized to execute and issue such certificates when the membership of said club reaches 5000.

" '*Be it further resolved,* that the said certificates issued to said Genslinger shall be transferable only to elected members of the club, and shall upon the first transfer from Genslinger be exempt from payment of transfer fee.

" '*Be it further resolved,* that a commission of six per cent on each and every membership issued by said New Illinois Athletic Club other than the said 1000 certificates hereinbefore mentioned shall be paid to the said Genslinger, up to 8000 members.' "

It seems clear from this resolution and the circumstances shown by evidence that the resolution was considered by both the club and Genslinger as a contract for services rendered and to be rendered. Genslinger resigned as secretary August 18, 1906, and while the evidence shows that between that date and 1913, when he filed suit against the club, he sought adjustment of his claim under the contract resolution of 1904, he did not demand the issuance of the 1000 certificates to him until he filed his cross-bill to the bill filed against him in August, 1913. All the circumstances tend to show that the parties treated the resolution of 1904 as a contract between the parties for services rendered and to be rendered by Genslinger in procuring members for the club.

The 1000 certificates were finally delivered to Genslinger on November 14, 1918, under the direction of the decree of the court hereinbefore mentioned. What, then, is the character of these certificates as considered by the parties? Both sides agree in their briefs that as Genslinger was already a member of the club and could not enjoy the privilege of 1000 members, the only benefit of the certificates accruing to him was what he could get from selling them. This being so, they were evidences of a contract right existing in Genslinger to receive for these certificates what he could from the sale of them, the club in turn to receive the benefit of such increased membership. There was necessarily an implied agreement on the part of the club to receive members to whom these certificates were transferred, provided they were not objectionable. No value was placed on the memberships to arise from such sale and transfer of the certificates, and the character of such memberships was in nowise indicated. The value of any of such certificates, and whether they had any value, depended entirely on whether and for what amount Genslinger could sell them. By these certificates no additional rights accrued to Genslinger as a member of the club. He could not be-

come one thousand members of the club, and it is not contended that he could have cast 1000 additional votes in the annual meeting of the club, as one may do with certificates of stock in a corporation. A certificate of membership in a club may be of great value, as where it is of a character which vests in the holder an aliquot part of the assets of the club, or as in a stock exchange or social club where the privileges afforded by membership result in gain, pleasure or social position to such member. The possession of 1000 additional certificates—or, in this case, the remaining 973—brought none of these advantages to Genslinger. In fact, they brought him nothing, so far as his membership was concerned, which he did not already possess. His rights under the resolution were contract rights. His realization on that contract depended on his sale of the certificates to prospective members of the club and their acceptance by the club. These rights existed under the resolution whether the certificates were, in fact, issued to him or not. Had he so chosen he might have sold memberships up to 1000 at whatever fee he chose and retained that fee, or, if paid to the club, require it to pay him such membership fee when the new member was accepted. This is but a reasonable construction of the contract .

If it could be said that he took these certificates as representing memberships in the club he took them subject to the by-laws, except that they were to be exempt from the first transfer fee. The by-laws required the payment of dues on memberships, other than life, for which certificates were issued. Had these certificates been considered as memberships in the club yet not subject to dues, it would have been a simple matter to have exempted them from the payment of dues as they were exempted from the first transfer fee. While it is apparent that the accumulation of dues might, on failure of ready sale, absorb all the compensation for services for which they were issued, that would, if they were considered as memberships, afford no

basis for exempting them from dues and cancellation, as that was a matter which Genslinger should have considered at the time the resolution was adopted and accepted by him. If these represented memberships there can be no basis for damages for wrongful cancellation of them, as it is admitted no dues were paid as to them. It is evident from the resolution forming the contract between these parties, the circumstances surrounding its adoption and the conduct of the parties thereafter, that these certificates were not considered by either party as representing memberships but merely as evidences of Genslinger's contract right to procure members for the club at whatever membership fees he chose and to receive those fees when new members were accepted by the club, such fees to be compensation to Genslinger for his introduction of new members after the club had reached the membership of 5000. In addition he was to receive six per cent on memberships up to 8000. It is not, and indeed cannot be, claimed, that under this arrangement, had this club been dissolved, Genslinger would have been entitled to the aliquot parts of the assets of the club represented by the 973 certificates held by him at the time of his death. It seems clear, therefore, that they can not be considered as representing memberships but as evidences of an arrangement whereby Genslinger would be paid money for services rendered and to be rendered, the amount of which money was to depend on whether Genslinger furnished new members through the use of such certificates and what he charged such new members for membership in the club. Both of these matters were entirely within his control, as the club in nowise directed or limited the amounts for which memberships were to be sold by Genslinger. The presentation of one of these certificates by one to whom Genslinger transferred it would have entitled the holder, if he be acceptable to the club, to membership therein, and the certificate, when the transfer was made on the books of the club, became for the first time a

certificate of membership in the club. While each certificate recited that the membership represented thereby is subject to dues, it was clearly the intention of the parties that only when such certificate was transferred to a new member and that member was accepted, thereby creating a membership represented by that certificate, was such membership to be subject to dues. This is clearly apparent on consideration of the purpose of their issue. The foregoing, it seems clear, is the substance of the arrangement between the parties. If not subject to dues, then, obviously, these certificates were not subject to assessments, and it is equally obvious that they were not subject to cancellation for non-payment of dues, and the club had no right to cancel and forfeit them, as it did on June 24, 1919.

Counsel for defendant in error argue that while not representing actual memberships so as to render them subject to dues, these certificates were of the same value as actual memberships, and the wrongful act of the club in canceling them gave the defendant in error a right to damages measured by the value of memberships in the club. This is the theory on which her case was tried. In support of this position her counsel say, that since Genslinger had a right to sell these certificates and thereby produce memberships in the club, their value to him was the value of that number of memberships at that time. On the other hand it is contended, in substance, that if they be not considered memberships it is error to award damages for the cancellation of them based on the value of memberships, for the reason that Genslinger was not entitled to anything for these certificates unless and until he sold them to acceptable prospective members of the club; that to award damages on such basis was to more than compensate him for any loss he had sustained, for the reason that any right to the proceeds of such certificates was subject to the precedent condition that he could, and would, sell them, and that to require the club to pay Genslinger the membership fees as

though he had sold them, when he had not, was to say to the club: "Because you have canceled this contract you shall pay at the rate of $200 per membership for these 973 certificates though you have not had the benefit of a single new member through his efforts and though by such payment you pay him much more than he has lost." These certificates cannot be considered as equivalent to memberships so as to make them liable for payment of dues. Whether they may be so treated in considering the question of the proper measure of damages will be hereinafter considered.

It is argued that trover will not lie for the conversion of these certificates. Counsel for both parties have presented extended argument and citation of cases, all of which have reference to certificates of membership bearing all of the incidents and privileges of membership in a corporation not for profit, such as a social club, stock exchange or board of trade. Since these certificates cannot be said to have represented memberships while held by Genslinger the cases cited on either side are not controlling. The rule adopted in this State is, that a membership in a club or board of trade, while a thing of value, is not property in the broad sense of the term, and is not subject to sale for debt and cannot be reached by a creditor's bill. (*Press & Co.* v. *Fahy,* 313 Ill. 262; *Weaver* v. *Fisher,* 110 id. 146; *Barclay* v. *Smith,* 107 id. 349.) In cases arising under the Bankruptcy act, the Federal courts, by reason of the language of that act, hold that such a membership is an asset of the bankrupt's estate. (*Chicago Board of Trade* v. *Johnson,* 264 U. S. 1; *Hyde* v. *Woods,* 94 id. 523.) Under the rule in this State, the certificates here involved, representing in their present form but contract rights personal to Genslinger, only, until transferred by him, cannot be said to represent memberships and are not subject to an action in trover under the rule laid down in the cases cited. Though these certificates be not so subject to an

action in trover and do not represent memberships in the club, they are evidence of a valuable contract right in Genslinger. *Press & Co.* v. *Fahy, supra; Jones* v. *Fisher,* 116 Ill. 68.

As we have seen, fourteen counts of the declaration are in case. These counts declare on the wrongful cancellation of the certificates, and though actual fraud is not specifically charged, the wrongful cancellation of these certificates, as charged in the declaration, constituted a fraud on the rights of Genslinger. It is evident that the purpose of amending the by-laws was to destroy whatever right Genslinger had in the certificates issued to him. Section 18, which limited the right of any member to hold more than one certificate of membership, was amended by excepting from its provision Charles H. Genslinger, to whom the club had been required to issue 1000 certificates of membership. Section 18 of the by-laws therefore limited all other members of the club to one certificate of membership, and when section 16, which was amended by raising the dues, was also amended to require the payment of annual dues upon each certificate of resident membership owned by a member which was outstanding and uncanceled, it is obvious that that provision could have applied, and was intended to apply, to no other member of the club than Genslinger. The same may be said of the amendment of section 17, which, as amended, required that each non-resident member and owner of a non-resident membership certificate shall pay annual dues of $30 on each of such certificates standing of record in his name. Obviously, there was no one else in the club to whom this change could have been made to apply, and it was, therefore, evidently a deliberate attempt to deprive Genslinger of his contract rights arising under the resolution of 1904, and the certificates issued pursuant thereto, and was a fraud on such rights. Under such a state of facts the plaintiff may sue in assumpsit on the contract or he may elect to bring an action in case

against the defendant for the wrong committed. (*Bates* v. *Bates Machine Co.* 230 Ill. 619.) Defendant in error has not, therefore, misconceived her remedy in these counts of the declaration.

It is also argued by plaintiff in error that this action was subject to the defense of the Statute of Limitations, section 19 of which requires that suit be brought within a year after the death of the claimant, and that the cause of action did not survive Genslinger. These questions were passed on by the Appellate Court in 229 Ill. App. 428, and decided contrary to the contention of plaintiff in error. Since the Appellate Court in that case reversed the judgment of the lower court and remanded the cause for further proceedings consistent with the opinion filed, there was not a final determination of these questions. When the case came before this court on direct appeal, (332 Ill. 316,) it was held, in considering whether a constitutional question was involved, that section 19 of the Statute of Limitations had no application to this case, and, even though unconstitutional, that fact did not confer jurisdiction on this court, and the cause was transferred. Counsel for plaintiff in error urge that as this court declined to take jurisdiction of the cause it had no power to pass on the matter of limitation or survival of the action. However, for the reason suggested, it was essential to decide the applicability of section 19 of the Limitations act, and whether it was necessary or not, that conclusion was right. What was said in that opinion as to the survival of this cause of action under the common law or by section 123 of the Administration act, whether necessary in that opinion or not, states the views of and rule established by this court. *Bunker* v. *Green,* 48 Ill. 243; *Northern Trust Co.* v. *Palmer,* 171 id. 383.

It is also argued that the declaration in this case is insufficient to sustain the judgment. It appears, however, that no demurrer was filed thereto. Demurrers were filed

to the pleas of plaintiff in error, and counsel say that these should have been carried back to the declaration. No motion to carry them back was filed, and it was not error on the part of the court to fail to do so when no such motion was made. *Town of Scott* v. *Artman,* 237 Ill. 394.

We come, then, to the question whether a proper measure of damages was applied in the trial of this case. Counsel for defendant in error argue that since the Appellate Court passed on the contention that the damages are excessive the question is not open here, as it is but a question of fact. While as to questions of fact the decision of the Appellate Court thereon is final, yet the question whether the trial court applied the correct measure of damages is one of law. It is the theory of defendant in error, as argued by her counsel, that the value of these certificates is to be determined by the value of memberships in the club. This theory, it is apparent, ignores the necessity of sale of them by Genslinger to acceptable new members, by which, only, were the certificates to have any value. To consider them as representing memberships in the club is, as we have seen, to subject them to the power of the club to require payment of dues thereon, with the result in this case, of course, that the certificates were properly canceled and are now of no value. They are, as we have seen, evidence of Genslinger's contract right to sell memberships and obtain the sale price thereof, subject to the acceptance of such new members by the club. Damages are recoverable to the extent necessary to return the plaintiff to as good position, but not a better one, than he would have occupied if the wrong had not been committed. So in this case, his measure of damages is only the value of the right destroyed at the time of its destruction. *Brewster* v. *VanLiew,* 119 Ill. 554; *Turner* v. *Retter,* 58 id. 264; 8 R. C. L. 434.

Over objection on the part of plaintiff in error the trial court permitted counsel for defendant in error to read to the jury the balance sheet of the club of October 31, 1918.

The theory upon which this balance sheet seems to have been considered competent is, that Genslinger, on dissolution of the club, at that time would have been entitled to shares in the net assets thereof as represented by these certificates. The nature of these certificates, as we have seen, did not carry such right to Genslinger. The financial condition of the club, however, to the extent that it showed it solvent, might have influenced the sale of certificates held by Genslinger, as he could scarcely expect to procure members for an insolvent club. This balance sheet was, moreover, incorporated in the stipulation of facts, and it was not error to read it to the jury as evidence that the club was solvent. In this connection it is, however, necessary to consider the error assigned on remarks of the court, in the presence of the jury, as bearing on the theory of damages adopted by defendant in error and by the court.

It appears that on the examination of one Joseph E. Hitt counsel for defendant in error objected to a question asked, stating: "I am willing that he should testify as to what was the fair cash market value of the certificates of membership of this club. I object to the question. These certificates of membership and others are just the same. There is no difference between them. I want it to cover all that it is supposed to cover.

The court: "There is no evidence that any of these were transferred.

Mr. Stransky, for plaintiff in error: "Does the court hold for that reason that we cannot show what they were worth?

The court: "I think they should follow whatever the general transfers are worth. The condition of the market might make them cheaper."

This statement of the court was a ruling which amounted to an expression of an opinion on one of the most strongly controverted issues of fact in the case, the decision of which rested exclusively with the jury. This ruling indicated

clearly to the jury that the court was of the opinion that the measure of damages to which defendant in error was entitled for the wrongful act of canceling these certificates was the value of general certificates of membership in the club. The verdict of the jury, which allowed an amount equal to $200 per share—the highest amount for which, as the evidence shows, any resident membership in the club had ever been sold—shows the influence of this erroneous ruling. We have often pointed out the danger arising from remarks of the trial court that would in any way tend to indicate an opinion as to facts to be found by the jury. The more strongly contested the issue the more likely are such remarks to result in prejudicial injury. We are of the opinion that in this case such injury was committed. This error was prejudicial to the rights of plaintiff in error.

From what we have said it is apparent that these certificates were not entitled to be valued as general memberships in the club. Nor could the damage done defendant in error by the wrongful cancellation of them amount, in the absence of proof that sales were made and the proposed members rejected, to the value of general memberships, and then only with evidence that the sale was for such an amount. To so fix the damages on this record is to ignore entirely the fact that Genslinger in his lifetime had transferred none of these certificates and proposed no members. The damages in this case arose from the cancellation of these certificates. These damages are affected by the evidence as to sales of memberships by Genslinger. He had no outstanding contracts to be affected by the cancellation of these certificates. There is in this record, therefore, no evidence that these certificates had the value of memberships in the club. Moreover, as we have seen, the certificates did not designate whether they might ripen into resident or non-resident memberships, nor is there evidence tending to show that non-resident memberships had any value, yet under the theory of damages applied, de-

fendant in error, because of this cancellation, is awarded damages equal to the amount of the maximum value of resident memberships shown in evidence. The defendant in error is entitled to recover such damages as she is able to prove, but the theory on which the damages were measured was erroneous and the verdict secured thereon can not stand.

It is also objected that the court erred in giving the eleventh instruction to the jury on behalf of defendant in error. This instruction was as follows:

"The jury is instructed, as a matter of law, that the defendant, New Illinois Athletic Club had no right to levy an assessment and dues against the nine hundred seventy-three (973) certificates of membership issued by it to Charles H. Genslinger during his ownership thereof, without the consent of said Genslinger, and if you believe from the evidence that an assessment and dues were levied against said certificates by said defendant, while such certificates remained in the possession and ownership of said Genslinger, and that because such assessment and dues were not paid by said Genslinger, the 973 certificates owned by him were declared forfeited and canceled by the defendant, and were of value, then you should find the defendant guilty, and assess the plaintiff's damages at such sum as you believe from the evidence was a fair value, if any, of said 973 certificates, at the time they were declared forfeited and canceled by the defendant."

In this case the pleadings put in issue the commission of certain acts by the board of governors of the club, the sufficiency of notice of the annual meeting at which the by-laws were changed, and various other matters of fact upon which a claimed right to cancel these certificates was based. This instruction stated as a matter of law a conclusion which, under the pleadings, depended on the determination of facts for its application and invaded the province of the jury as to such facts. This instruction is also misleading

in that it tells the jury that they might assess the plaintiff's damages at such sum as they believed from the evidence was "a fair value, if any," of the certificates, without explaining the meaning of that expression. It therefore left the jury free to determine what was a fair value. If such certificates are shown to not have a market value, the measure of damages may be their fair cash sale value under the evidence, or their usual and customary cash sale value, if such is shown by the evidence, or actual cash value, if so shown. The term "fair value" is misleading when used without an explanation from the court as to its limitation. In this case the instruction should not have been given, for, as we have said, the measure of damages is the value of the right destroyed at the time of its destruction. Particularly is this true in this case, where throughout the trial of the case it was argued that the value of services rendered by Genslinger warranted a large verdict. The value of Genslinger's services is not an issue in the case. Whatever they were worth, he contracted to accept for them six per cent of the amount received from memberships and these certificates. It is not claimed that any part of this six per cent remains unpaid. When Genslinger accepted the arrangement whereby he was to take these certificates as part of his compensation, he agreed to take them with whatever inherent strength or weakness they contained and whatever, if any, value they possessed. The value of his services therefore is not an issue here and it was not proper to argue same.

For these errors the judgments of the Appellate and circuit courts are reversed and the cause remanded to the circuit court for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. JUSTICE DEYOUNG took no part in this decision.