HERBERT J. WANDERER, Trustee, Plaintiff-Appellee, *v.* PLAINFIELD CARTON CORPORATION *et al.,* Defendants-Appellants.—(PLAINFIELD CARTON CORPORATION, Counterplaintiff and Third-Party Plaintiff-Appellant, *v.* HERBERT J. WANDERER *et al.,* Counterdefendants and Third-Party Defendants-Appellees.)

Third District   No. 75-414

Opinion filed July 21, 1976.—Order entered August 4, 1976.

Prins, Flamm & Susman, Ltd., of Chicago (Arthur T. Susman, of counsel), for appellants.

Thomas, Wallace, Feehan & Baron, Ltd., of Joliet, and Matthews, Jordan, Dean, Eichmeier & Petersen, of Aurora (Theodore Bednarek, of counsel), for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Defendant Plainfield Carton Corporation appeals from a judgment of the Circuit Court of Will County in the sum of $25,214.50, for overdue rent and other damages, which was entered in favor of Herbert Wanderer, as trustee, against defendant. The judgment resulted from a bench trial. Wanderer was the landlord of certain premises leased by the defendant for a 5-year term, and he filed the instant action when Plainfield abandoned the premises before the term expired.

On appeal in this court, defendant Plainfield contends that the trial court should have credited defendant (as an offset to its liability for delinquent rent) with rental received and to be received by the landlord, Wanderer, from a new tenant during the balance of the original lease

term, to the extent that those rentals exceeded the rent called for in the original lease.

Defendant also asserts that the trial court was in error in awarding plaintiff certain portions of the total judgment, including $7,868 in reletting expenses and $3,932.50 as attorney's fees incurred in enforcing the covenants of the lease between Wanderer and Plainfield Carton Corporation. Defendant also contends that the court improperly refused to order plaintiff Wanderer to produce the trust agreement under the authority of which he claimed to be acting.

The record discloses that Wanderer, as trustee for Plainfield Building Corporation, or Plainfield Trust, entered into a written agreement with Plainfield Carton Corporation to lease the premises under consideration for five years beginning June 1, 1971. The property consisted of an industrial building with 27,000 square feet of floor space, for which defendant was to pay $1,750 monthly and, also, to pay any real estate taxes thereon. The tenant Plainfield Carton also had an option to lease an adjoining 9,000 square feet of space for another $5,500 yearly, and, also, had an option to renew the lease generally at the end of the five-year period for a higher rental. Under the lease, plaintiff Plainfield Trust was to be responsible for repairing the roof and certain walls, and the lessee had the responsibility for all other maintenance.

After Plainfield Carton had occupied the structure for only six months, it determined to consolidate with its Chicago operations and substantially moved out of the premises. After it had made an unsuccessful attempt for a few months to seek a replacement tenant, defendant Plainfield Carton asked the landlord Wanderer if he would help find a new tenant. Wanderer agreed to look for a tenant and, a year later, in February 1973, Wanderer informed defendant that Acoustiflex Corporation would begin a new 5-year lease of the building on March 1, 1973. Wanderer asked that the tenant immediately remove from the premises the equipment and material remaining there. The tenant promptly complied with the request.

Defendant Plainfield Carton had continued paying rent from the time it substantially vacated the premises until September 1972. It was, therefore, six months in arrears in rent payments at the time Acoustiflex moved into the premises, and it also owed plaintiff for some real estate taxes for this period. This amounted to $10,500 in rent for the six months and $2,914 in taxes. There was the undisputed amount of cost to plaintiff Wanderer in reletting the premises to Acoustiflex of $6,768 in broker's commissions and $1,100 in attorney's fees. The trial court awarded these amounts to plaintiff together with $3,932.50 in attorney's fees arising from the current litigation, for a total award of $25,214.50.

Defendant's theory in the trial court, which it did not press very

vigorously on appeal, was that plaintiff Wanderer's response to a request for help in finding a new tenant was sufficient to constitute him an agent of Plainfield Carton Corporation for the purpose of subletting the premises. The defendant thus argued that it was entitled to all rents received from Acoustiflex out of which it would owe Wanderer the monthly rent according to the original lease. Plainfield Carton also advances another theory on appeal, claiming a right of set-off on an interpretation of Clause 10 of the lease, which concerns the right of the landlord to reenter and relet the premises upon abandonment by the tenant.

Landlord Wanderer correctly points out the general rule that a party may not advance a completely new theory for the first time on appeal (*Kravis v. Smith Marine Inc.* (1975), 60 Ill. 2d 141, 147, 324 N.E.2d 417). We believe, however, that the trial court erred in its determination of damages for reasons which we will discuss and we deem it appropriate to resolve this cause on the merits on the basis of the respective contentions of the parties.

We note that by the terms of the new lease Acoustiflex was to pay $2,820 monthly, which included rental of the 9,000 square feet adjacent to the main building. Acoustiflex had only to pay those real estate taxes which exceeded $2,200 each year, and the landlord also undertook broader responsibilities of maintenance and repair than the landlord had in the original lease to defendant.

The trial court asserted it would be pure speculation to attempt to compare the benefits to the landlord from the original lease on one hand, and the new Acoustiflex lease on the other. We believe, however, that a fair and proper comparison can be made which shows that the landlord has in fact profitted from the new lease during the period specified for the continuation of the old lease while Acoustiflex occupied the building.

Under the Plainfield Carton lease, the tenant was to pay $21,000 a year in rent. Assuming that the landlord would have gotten maximum benefit from that lease, he would have received $26,500 yearly including the $5,500 for the optional rental of the remaining 9,000 square feet. For the same premises he is now receiving $33,840 yearly, or $7,340 more per year than under the original lease (with the extra 9,000 square feet included on the optional rent basis, assuming that Plainfield Carton had occupied that portion). The landlord must, however, pay the first $2,200 in real estate taxes for which the tenant was responsible under the original lease, so that the landlord actually receives an excess of only $5,140 more a year than in the old lease arrangement.

There were 39 months, or 3¼ years, remaining in the original lease term when Acoustiflex began paying rent in March 1973. The excess rent received by the landlord during this period of time, in excess of what he would have received for the same premises under the original lease (and

the optional portion), had the original lease remained in effect, comes to a total of $16,705 of additional rent received.

We, therefore, have the issue raised as to whether this excess amount accruing to the landlord, as a result of defendant's abandonment of the premises, should be credited to defendant. There was no question in this case of whether the landlord had a duty to mitigate damages by reletting the premises when the tenant abandons in the course of the lease term, a question which is still somewhat unsettled in this State. See *Reget v. Dempsey-Tegeler* (5th Dist. 1968), 96 Ill. App. 2d 278, 280-81, 238 N.E.2d 418; *Wohl v. Yelen* (1959), 22 Ill. App. 2d 455, 461-65, 161 N.E.2d 339.

In the cause before us, the landlord did relet, for at least the monthly rent which would have been paid by Plainfield Carton, and to that extent certainly relieved Plainfield Carton of its obligation during the remaining portion of the lease term as long as the new tenant paid rent. The question we are called upon to deal with, however, is whether the excess rent realized by the landlord during this time, in excess of what he would have received by the terms of the original lease, should be credited against unpaid rent owed by the original tenant from the period prior to the Acoustiflex occupancy after crediting the landlord with other expenses of the landlord by reason of the new tenancy.

■■ Generally, a plaintiff suffering injury is entitled only to a cause of action for damages *actually* sustained. (*Smith v. Hill* (1958), 12 Ill. 2d 588, 595, 147 N.E.2d 321.) As to contractual breaches particularly, as expressed by the court in *King v. Gilson* (1863), 32 Ill. 348, 355:

> "[I]t seems to be a rule of general application, that in all actions on contract, sounding in damages, * * * the plaintiff is entitled to recover damages only to the extent of the injury sustained. If circumstances exist which mitigate the injury, they must be considered in measuring the damages."

This general rule would also control determination of the measure of damages normally to be applied in cases of breach of a lease agreement. This measure of "actual loss" has been set forth in numerous cases which indicate that damages for breach of contract are compensatory in nature, in restitution for the harm caused, and should only make the injured party whole again, or in the position he would have been in had the contract been performed, and not in a better position than if there had been performance. *Genslinger v. New Illinois Athletic Club* (1930), 339 Ill. 426, 443, 171 N.E. 514; *349 West Ontario Building Corp. v. Palmer Truck Leasing Co.* (1st Dist. 1974), 22 Ill. App. 3d 467, 477-78, 317 N.E.2d 740; *St. Joseph Hospital v. Corbetta Construction Co.* (1st Dist. 1974), 21 Ill. App. 3d 925, 935-37, 316 N.E.2d 51; *Bimba Mfg. Co. v. Starz Cylinder Co.* (1st Dist. 1969), 119 Ill. App. 2d 251, 271, 256 N.E.2d 357; *Santiemmo v.*

*Days Transfer, Inc.* (1956), 9 Ill. App. 2d 487, 502, 133 N.E.2d 539; See also 11 Williston on Contracts §1338, at 198, 202-03 (3d ed. 1968).

This proposition has been affirmed in several opinions of the Seventh Circuit of the Federal Circuit Court of Appeals, including one case involving a breach of lease. *Bowes v. Saks & Co.* (7th Cir. 1968), 397 F.2d 113, 119; see *Alover Distributors, Inc. v. Kroger Co.* (7th Cir. 1975), 513 F.2d 1137, 1140; *Calumet Federal Savings & Loan Association v. Lake County Trust Co.* (7th Cir. 1975), 509 F.2d 913, 921; *United Protective Workers of America, Local No. 2 v. Ford Motor Co.* (7th Cir. 1955), 223 F.2d 49, 53.

On the basis of this principle, the landlord would be entitled to recover only his actual losses and the excess rent received by Wanderer because of the breach and abandonment by Plainfield Carton would be applied to the credit of Plainfield Carton, to the extent of damages owed by Plainfield Carton to Wanderer.

■■■ While we have discovered no cases specifically applying the rule to the factual situation such as confronts us in the instant case, early Illinois cases held that the measure of damages when a lease was breached was the total unpaid rent for the remaining term of the lease, less what the landlord could obtain from reletting the premises for all or part of that term. (*Hinde v. Madansky* (1911), 161 Ill. App. 216, 220; *Resser v. Corwin* (1897), 72 Ill. App. 625, 628-29.) In an early Supreme Court case the controlling rule was stated as follows (*Grommes v. St. Paul Trust Co.* (1893), 147 Ill. 634, 644-45, 35 N.E. 820):

> "[T]he rent due from the original lessee is to be credited with such rent as is realized from the re-letting. *The lessor is entitled to such sum, as shall be equal to the rents required by the terms of the lease to be paid during the full term, and not to any greater sum.*" (Emphasis added.)

There appears to be general agreement that the lessee who breaches a lease is entitled to a rent credit for any proceeds gained by the landlord from reletting during the period of the original lease term. (*Marshall v. John Grosse Clothing Co.* (1900), 184 Ill. 421, 424, 56 N.E. 807; *Spear v. Haggarty* (1912), 168 Ill. App. 559; 49 Am. Jur. 2d *Landlord and Tenant* §623 (1970); see *Scheinfeld v. Muntz TV, Inc.* (1966), 67 Ill. App. 2d 8, 17, 214 N.E.2d 506.) The tenant, however, is not entitled to recover any excess proceeds over and above the amount he owed by reason of the breach, if there were any excess amounts, in absence of any showing of some agreement or relationship which would entitle him to such excess proceeds. 49 Am. Jur. 2d *Landlord and Tenant* §623 (1970).

Plaintiff cites three cases which held that the excessive monthly rent obtained by the landlord need not be credited as against past-due rent

owed by the original lessee. The most recent, *D. H. Overmeyer Co. v. Blakeley Floor Covering, Inc.*, 266 So. 2d 925 (La. App. 1972), *cert. denied*, 263 La. 615, 268 So. 2d 676 (1972), found no precedent one way or the other and held at page 927:

> "[T]he rents collected from the second tenant should only be credited against that amount the defaulting lessee would have been required to pay from the time of the second occupancy to the expiration of the lease."

In fact, as plaintiff's brief notes, there are two earlier cases reaching the same result: *Schooley v. Wilker* (1929), 33 Ohio App. 462, 169 N.E. 829, and *Trick v. Eckhouse* (1924), 82 Ind. App. 196, 145 N.E. 587. None of the three cases cited by plaintiff have been cited since on the issue, and while we have respect for opinions of our brethren in the intermediate courts of review in neighboring jurisdictions, we are not bound to follow them, particularly where, as here, we determine that another result is more in accordance with equitable principles and long-standing legal principles announced in this State. We, therefore, do not believe that these three cases accurately reflect the law which should be applied to the facts in the instant case.

Another case cited by plaintiff, *Miller v. Der Wienerschnitzel International, Inc.* (1973), 265 Ore. 438, 509 P.2d 1170, not only does not support the rule referred to in the three cases cited by plaintiff referred to, but appears to support a contrary result. In the *Wienerschnitzel* case, the breaching tenant was allowed a credit as against unpaid rent and other damages such as attorney fees for the savings in capital expenditures which the landlord realized by more favorable terms in the new lease than were in the old one. The lessor there was limited to actual losses, his benefits from the new lease being taken into account in reducing the tenant's liability.

We believe that the proper determination in this cause is that Wanderer as plaintiff and landlord is entitled only to recover for his actual losses due to the breach by Plainfield Carton. He obviously did not lose anything during the last 39 months of the 60-month lease since Acoustiflex began paying rent, and in fact he mitigated his damages further by obtaining $16,705 more during that period in rent than he would have received under the original lease even if Plainfield Carton had exercised the option to rent the additional 9,000 square feet of space.

In support of the conclusions of this court, we note that in *Humiston, Keeling & Co. v. Wheeler* (1897), 70 Ill. App. 349, there was a 2-year lease at $400 a month. After 10½ months the tenant abandoned. A few months later the landlord relet a portion of the premises for $300 for one month and then relet the entire premises for the last 4 months of the original term at a rental of $525 per month. In determining the damages in that case the

trial court determined that the total amount of rent due under the original lease from the time of abandonment to the end of the term, and then subtracted all of the rent received by the landlord in the interim. We do note, however, that the application of the measure of damages was not challenged on appeal.

Two Texas cases support the same conclusion. See *White v. Watkins* (Tex. Civ. App. 1964), 385 S.W.2d 267, and *Maida v. Main Building* (Tex. Civ. App. 1971), 473 S.W.2d 648, where the court considered the entire period from the date of abandonment to trial date.

We determine that it is reasonable and consistent with the lease to conclude that when a defendant, as tenant, abandons the premises, he is fully responsible for all rent accruing until such time as a new tenant is found. If the rent received from the new tenant was not enough to cover the rent which would have been received from the old tenant, once reletting costs are deducted from the receipts, the tenant would be liable for the difference between the amount of rent which would have been gotten from the old tenant after crediting the new rents as against the obligations of the tenant on the lease together with other costs in obtaining and maintaining the tenancy.

■■ The only other problem which remains is the assertion that the old lease was terminated at the time Acoustiflex moved in. If the lease was in fact terminated by notice so as to relieve the tenant of any further obligations for rent, the damages then accruing to the landlord could have become fixed and the tenant would be released from all further liability. If such were the case, the damages as awarded by the trial court here would be proper and there would be no credit for the tenant by reason of the excess rent. As we read the record, if Acoustiflex had abandoned the premises during the original lease term, defendant Plainfield Carton could still have been held responsible for the rent deficiency resulting from the further reletting. We find no support in the record for a conclusion that the obligations of Plainfield Carton were released or terminated when Acoustiflex moved in.

While there is some indication that the landlord may have undertaken certain expenses of repair and maintenance during the Acoustiflex occupancy which he would not have had to undertake under the Plainfield Carton lease, to the extent that such expenses may have been incurred before May 31, 1976 (the termination of the original lease term), the landlord could deduct that amount from the $16,705 credit to which Plainfield Carton would be entitled.

Defendant Plainfield Carton argues further that it should not have been required to pay $6,768 in broker commissions and $1,100 in attorney fees which landlord Wanderer incurred in connection with reletting the premises to Acoustiflex. We agree, however, with plaintiff that it would be

unjust to allow defendant to escape the burden of these apparently reasonable expenses which were incurred by plaintiff in attempting to mitigate the damages for which defendant would be liable. We also believe that the provisions of Clause 10 of the original lease is clear on this subject, in which clause it is stated:

"If Lessee shall abandon or vacate the premises, or if Lessee's right to occupy the premises be terminated by Lessor by reason of Lessee's breach of any of the covenants herein, the same may be relet by Lessor for such rent and upon such terms as Lessor may deem fit; and if a sufficient sum shall not thus be realized monthly, after paying the expenses of such reletting and collecting to satisfy the rent hereby reserved, Lessee agrees to satisfy and pay all deficiency monthly during the remaining period of this lease."

We believe that this language clearly provides that reletting costs should be paid directly out of the rent received from the new tenant, and if the remaining amount is insufficient to equal the rent which the breaching lessee would have paid, then the lessee would be required to make up the difference. If the landlord is able to relet for a sufficient increase in rent to cover the reletting costs and still permit him to come out ahead, the tenant should not be liable for the reletting costs as we interpret Clause 10. We believe, therefore, that if the reletting costs of $7,868 could be deducted from the $16,705, the defendant would have been required to pay the portion of the reletting costs in excess of what would be covered by the $16,705 after that amount had been applied to the $13,414 in rent and taxes owed by the defendant.

■■ There is a contention by defendant that it should not be charged with $3,932.50 in attorney fees which plaintiff Wanderer incurred in this litigation and which the trial court charged to the defendant. We do not agree with defendant on this issue since it clearly appears to be authorized under Clause 16 of the lease, which provides:

"Lessee will pay and discharge all reasonable costs, attorneys fees and expenses that may be incurred by Lessor, in enforcing the covenants and agreements of this Lease, and all covenants and agreements herein contained."

Clause 16, which is also arguable authority for awarding costs of reletting to the landlord, expressly permits the court to award attorney fees for the landlord's efforts to gain the amounts due from Plainfield Carton under the lease.

Defendant points out that most of the litigation concerning its counterclaim and arguments concerns the setoff of excess rent obtained by the plaintiff from Acoustiflex and argues that this was not "enforcing the covenants and agreements of this lease" on the part of the landlord. The issues, however, which were involved in the litigation as a whole

were intrinsically related and pertained to the landlord's right to past-due rent and other damages owing by defendant. We cannot say that the award of the reasonable amount for attorney's fees was not justified in light of Clause 16 of the lease.

■■ Defendant finally attacks the trial court's refusal to compel plaintiff Wanderer to produce the alleged trust document by which he could show his right to bring the instant action. While Wanderer did allege his position as trustee and should have been made to prove it when challenged by defendant, as a plaintiff's right to bring an action should be established, nevertheless it appears that defendant admitted Wanderer's authority as trustee in its answer, and, in any case, it does not appear to be seriously questioned that plaintiff Wanderer was in fact the trustee for the building corporation and the effective landlord for the premises under the lease which was executed by him as lessor. We conclude that the trial court's refusal to compel the production of the trust document was harmless error under the circumstances.

We, therefore, affirm the trial court's decision to charge the reletting costs and attorney fees to Plainfield Carton and we affirm the overall award of damages limited as directed herein and subject to modification by crediting the benefits received by plaintiff, from the Acoustiflex lease, so that the final award of damages accurately reflects the actual losses incurred by plaintiff as a result of Plainfield Carton's breach of the lease. On remand of this case plaintiff should also be allowed to show any required expenditures made under the new lease before May 31, 1976, which would not have been required under the old lease (if required by the Acoustiflex lease for the period involved), in reduction of the amount and as a reduction of the credit to defendant.

For the reasons stated, therefore, this cause is reversed and remanded to the Circuit Court of Will County with directions to proceed in this case in accordance with the views expressed in this opinion.

Reversed and remanded.

STENGEL and BARRY, JJ., concur.

### ORDER

Following the filing of the final opinion in the above case, a petition for rehearing, or in the alternative, a request for a ruling dismissing Acoustiflex Corporation, a third-party defendant-appellee in the appeal, as a party was filed. All parties are in agreement as to dismissal of Acoustiflex Corporation as a party.

No relief was requested as against Acoustiflex and none was granted in any manner. The motion to dismiss Acoustiflex Corporation as a party in

this cause is granted without any prejudice to the remaining parties in the case to be bound by the determination set forth in the written opinion heretofore filed in this cause. As so specified, Acoustiflex Corporation, an Illinois corporation, is herewith dismissed as a party in this cause, pursuant to its request and motion.